CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 07 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DENNIS BARNES, | ) |
|     Plaintiff, | ) Civil Action No. 7:06CV00745 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| LARRY HUFFMAN, et al., | ) By: Hon. Glen E. Conrad |
|     Defendants. | ) United States District Judge |

Dennis Barnes, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. §1343.[1,2] Plaintiff seeks 1.78 million dollars in monetary damages and injunctive relief. Defendants have filed a motion for summary judgment, and plaintiff has responded. Therefore, the complaint is ripe for the court's review. For the reasons that follow, the court will grant summary judgment in favor of the defendants.

### I. Factual Summary

Plaintiff is presently incarcerated at Wallens Ridge State Prison (hereinafter "WRSP"). On January 31, 2006, the plaintiff submitted a petition to the Warden complaining about the quality of the food at WRSP. Plaintiff had this petition signed by thirty-seven (37) other inmates. Thereafter, plaintiff was terminated from his employment as a tutor with the Department of Correctional Education ("DCE"). Plaintiff claims that (1) he was fired from his job as a DCE tutor at WRSP in retaliation for submitting a petition complaining about the institutional food; (2) that he experiences health problems

---

[1] Barnes' original complaint named Larry Huffman, Virginia Department of Corrections Regional Director, A. David Robinson, former Wallens Ridge State Prison (hereinafter "WRSP") Warden, Randy Fleenor, WRSP Rehabilitative Counselor, Sergeant Young, WRSP Sergeant, and Investigator Still, WRSP Institutional Investigator, as defendants. Barnes amended his complaint on April 5, 2007, to add Ms. P. Scarberry, WRSP Food Service Director, Ms. A. Schupe, WRSP Food Service Manager, Mr. J. Salyer, WRSP Recreational Supervisor, and Ms. B. Ravizee, WRSP Grievance Coordinator, as defendants.

[2] The court notes that plaintiff previously filed a 42 U.S.C. § 1983 civil rights action, concerning the same allegations as the present action, on November 22, 2006 (7:06CV00689). Plaintiff requested a voluntary dismissal of that action which was granted by order entered November 30, 2006.

as a result of the institutional diet at WRSP; (3) that there is an inadequate law library at WRSP; (4) that he is being housed in a security level 5 facility when he should be housed in a level 3 facility; and (5) that he is afraid to file complaints because he fears further retaliation at WRSP.

## II. Failure to Exhaust

The Prison Litigation Reform Act (hereinafter "PLRA") requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions. See 42 U.S.C. § 1997e(a) (requiring that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); see also, Dixon v. Page, 291 F.3d 485 (7th Cir. 2002) (citing Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate complaint must be dismissed for failure to exhaust even if the inmate demonstrates that he filed a grievance and appealed it to the highest level of the prison's grievance procedure after commencing the lawsuit)). In the instant action, plaintiff failed to fully exhaust the grievance procedures available to him at WRSP concerning his claims (3) that there is an inadequate law library at WRSP; (4) that he is being housed in a security level 5 facility when he should be housed in a level 3 facility; and (5) that he is afraid to file complaints because he fears further retaliation at WRSP.

Plaintiff, as a Virginia inmate, is required to exhaust the claims raised in the instant complaint in accordance with the grievance procedures established by the Virginia Department of Corrections (hereinafter "VDOC"). In particular, he must comply with Division Operating Procedure (hereinafter "DOP") 866, which provides multiple levels of administrative remedies in the form of inmate grievances. DOP 866 requires that, prior to submitting a regular grievance, the inmate should demonstrate that he has made a good faith attempt to informally resolve the complaint by filing an

2

informal complaint form to the appropriate department head. Prison officials must respond in writing to the inmate's complaint within fifteen (15) days of receiving an informal complaint to ensure that the informal responses are provided prior to the expiration of the thirty (30) day time period in which an inmate may file his regular grievance. Responses must be made in writing with the reasons for the response stated clearly. Prisoners at WRSP are required to attach their informal complaint to their regular grievance. Once a regular grievance has been denied, there are three levels of review available. Level I reviews are conducted by the Warden or Superintendent of the facility. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are conducted by the Regional Director, Health Services Director, or Chief of Operations for Classification and Records. For those issues appealable to Level III, the Deputy Director or Director of the VDOC conducts a review of the regular grievance. The time-limit for issuing a Level I response is 30 days and the time-limit for Level II and III responses is 20 days. Expiration of the time-limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level of review. Those grievances that do not meet the filing requirements of DOP 866 are returned to the inmate within two working days from the date of receipt noting the reason for the return on the intake section of the grievance form. The inmate is instructed how to remedy any problems with the grievance when feasible.

According to the affidavit of Brenda Ravizee, WRSP Grievance Coordinator, plaintiff submitted several regular grievances complaining about the inadequacy of the law library. These grievances did not meet the intake criteria because plaintiff either requested a service or he did not attach the informal complaint to his grievance form. Ravizee noted these reasons on the back of each grievance form and returned the grievances to plaintiff. Ravizee advised plaintiff to attach his informal complaint and re–

submit his grievance. Plaintiff failed to so. Plaintiff did appeal this intake decision on one occasion but the regional office upheld the intake decision not to accept the grievance.[3]

Ravizee further indicates that plaintiff failed to file any grievances that were accepted for intake pertaining to his complaints of remaining in a level 5 facility[4] and his fear of further retaliation.[5] Accordingly, plaintiff failed to exhaust his administrative remedies as to his latter three claims and those claims must be dismissed pursuant to 42 U.S.C. § 1997e(a). Defendants admit, however, that plaintiff fully exhausted his other two claims.

---

[3] Assuming arguendo that plaintiff had exhausted all available administrative remedies, this claim would fail on the merits. It is certainly possible that inadequate legal services could give rise to a violation of a prisoner's constitutional rights. In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, in order to prevail on an access to courts claim it is not enough for a prisoner merely to state that the legal services available to him are inadequate. According to the Supreme Court, "the inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). Plaintiff alleges that he is not provided physical access to the library, that the available forms are outdated, and that he does not have access to staplers and a typewriter. Plaintiff fails to sufficiently demonstrate that the alleged deficiencies at the WRSP library hindered his legal claim. Plaintiff admits that he has received every available book that he has requested from the library. Also, he does not claim that the allegedly outdated forms interfered with any legal claim. Further, he is not entitled to a stapler and typewriter. The court does not require submissions to be stapled and, because staples are small pieces of metal that can be manipulated to cause harm, they constitute a valid penological safety concern. See Lewis, 518 U.S. at 361 (finding that a prison regulation or policy may interfere with the right of access to the courts if the challenged regulation or policy bears a rational relation to legitimate penological interests); see also Wenzler v. Warden of G.R.C.C., 949 F. Supp. 399 (E.D. Va. 1996) (citing Taylor v. Coughlin, 29 F.3d 39, 40 (2nd Cir. 1994) (finding that the right of access to the courts does not encompass a right to possess a typewriter)). Therefore, the court finds that the prison's actions and policies are reasonable under the circumstances and, further, that plaintiff has not suffered any true interference with his ability to prosecute this action. Finally, plaintiff's allegations in his response concerning his attempts to obtain his trial transcripts and file a post-conviction appeal do not state a claim. Legal assistance is required only in the absence of access to a law library. See Bounds, 430 U.S. at 828. In this civil rights case, plaintiff concedes that WRSP provides not only a law library, but also provides access to a person trained in law to assist the prisoner. Accordingly, plaintiff's allegations fail to state a claim of inadequate access to legal assistance.

[4] This claim also fails since inmates do not have a protected interest in being housed in the facility of their choice. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983).

[5] Plaintiff's retaliation claims will be addressed in a forthcoming section of this opinion.

## III. Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## IV. Analysis

In order to state a claim under § 1983, plaintiffs must allege facts sufficient to establish that they have been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Having reviewed the plaintiff's allegations, the court concludes that he has failed to state a claim of constitutional magnitude against any of the named defendants.

### A. Retaliation and Due Process Claims

In this case, plaintiff alleges that he was terminated from his job as a DCE tutor in retaliation for circulating and submitting a petition complaining about the food at WRSP. He further alleges that he was denied due process during his removal. An investigation by Sergeant Still, the Institutional Investigator, determined that the plaintiff should be removed from his job "to ensure the safety o[f] the institution." (Pl. Compl., Ex. G.) Plaintiff, however, points to a conversation with Sergeant Young as

5

evidence of the retaliatory nature of his termination. According to plaintiff, Sergeant Young informed him that "the letter [he] wrote didn't go over well with them[,]" he was "lucky they didn't lock [him] up for it[,]" and that he "can't do that here." (Pl. Compl. at Paragraph 12.) Plaintiff further contends that he has applied to other jobs for which he is qualified, but that he has been denied employment.

In order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). An inmate must present more than conclusory allegations of retaliation. Id. at 74. Further, retaliation claims are treated skeptically in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Thus, under Adams, plaintiff must demonstrate that he had a constitutionally protected to right to submit a petition concerning the food or that his termination as a DCE tutor violated a constitutional right. In addition, plaintiff must demonstrate causation–that the protected conduct was a "substantial" or "motivating factor" in the defendants' decision. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). If a plaintiff successfully shows causation, the burden then shifts to the defendants who must demonstrate that they would have made the same decision in the absence of plaintiff's protected conduct. Mt. Healthy City Sch. Dist., 429 U.S. at 287; see also Woods v. Edwards, 51 F.3d 577, 580-81 (5th Cir. 1995) (summary judgment affirmed where prison officials showed non-retaliatory justification for actions and inmate offered no evidence other than his personal belief that the actions were based on his exercise of rights).

The court need not consider whether plaintiff exercised a constitutional right when he submitted his petition, as the defendants have conclusively proven that their decision would have been the same regardless. The affidavit of Lieutenant Still, formerly a WRSP Sergeant and Institutional Investigator, indicates that, in 2005, plaintiff requested placement as a prison informant concerning narcotics in

6

return for a lesser sentence. When prison officials informed plaintiff that a lesser prison sentence was not an option, he indicated that he was no longer interested in being an informant. However, plaintiff still apparently considered himself to be a "super spy" at WRSP. (Defs.' Mot. Summ. J., Ex. 8 at 2.) Still explains that, during plaintiff's time as a tutor, he had a significant amount of contact with many other inmates. Tutors are able to easily pass contraband between other inmates due to their access and privileges. After prison officials confiscated narcotics from plaintiff on two separate occasions, they determined that he was a potential security risk and terminated his employment as a tutor. Still's affidavit states that plaintiff "had become a disruptive force at the institution" and that his access to a large number of inmates was a "potential for breaches in security." (Defs.' Mot. Summ. J., Ex. 8 at 2.) Plaintiff was indicted in the Wise County Circuit Court on May 24, 2006, for possession of a schedule II drug. Accordingly, the court finds that defendants' stated justification for plaintiff's termination is credible and sufficient to prove that plaintiff was terminated from his position as a tutor for non-retaliatory reasons. Therefore, the court will grant defendants' summary judgment motion as to this issue.[6,7]

---

[6] To the extent that plaintiff claims that defendants violated his due process rights because he was removed from his work assignment, that claim must also fail. Plaintiff has no constitutionally protected liberty interest in any particular job assignment or work detail. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983); Johnson v. Knable, 862 F.2d 314 (4th Cir.1988) (finding that prison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate); Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978) (holding that the classifications and work assignments of prisoners are matters of prison administration, within the discretion of the prison administrators); Mitchell v. Murray, 856 F. Supp. 289, 293 (E.D. Va. 1994). Because plaintiff did not have a constitutionally protected right in his job as a DCE tutor, he was not entitled to due process prior to his termination from that job. Therefore, plaintiff's allegations cannot state a valid due process claim.

[7] In his response to defendants' motion for summary judgment, plaintiff contends that he is "in extreme fear for [his] safety." (Sealed Resp. at 3, Paragraph 5.) This court will construe plaintiff's claims as a motion for the court to issue a preliminary injunction ordering that he be placed in protective custody. Plaintiff claims that defendants, in retaliation for this suit, may try to cause him physical harm. He claims that he was told by another inmate that Sergeant Goins offered the inmate 100 postage stamps to "do a 'hit'" on the plaintiff. (Sealed Resp. at 3, Paragraph 5.) The inmate indicated to plaintiff that he does not "do hits any more." (Sealed Resp. at 3, Paragraph 5.) Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. See

Case 7:06-cv-00745-GEC-mfu   Document 47   Filed 11/07/07   Page 7 of 11   Pageid#: 455

## B. Deliberate Indifference Claim

Plaintiff next claims that he experiences health problems as a result of the institutional diet at WRSP. Plaintiff alleges that the food at WRSP is often spoiled and that eating the food results in plaintiff suffering gastrointestinal problems and a rash. He also claims that the portions are inadequate. He further alleges that he once found a piece of plastic on the bottom of a piece of cake.

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993) (holding that a prisoner must show physical injury to maintain a civil action based upon inadequate nutrition).

"It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the

---

Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1991). In determining whether preliminary injunctive relief should be granted, the court applies the "balance of hardship" test. Wetzel v. Edwards, 635 F.2d 283, 287 (4th Cir. 1980). Under this test, the court should consider four factors: 1) whether the plaintiff will suffer irreparable harm if the relief is not granted; 2) the likelihood of harm to the defendant if relief is granted; 3) the likelihood that plaintiff will eventually succeed on the merits; and 4) whether public interest lies with granting relief. Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg., Co., 550 F.2d 189, 195 (4th Cir. 1977). Without a showing that plaintiff will suffer imminent, irreparable harm, the court cannot grant interlocutory injunctive relief. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991). In his request for injunctive relief, plaintiff has not alleged any credible facts which suggest that he is likely to suffer imminent, irreparable harm. Accordingly, his request is denied.

inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (quoting Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980) (internal quotations omitted). Allegations of inadequate prison food service may be sufficient to state a cognizable claim under § 1983, so long as the deprivation is serious. Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir.1978). On the other hand, occasional, short-lived problems with prison food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment. See Bedell v. Angelone, No. 2:01CV780, slip op. at *14 (E.D. Va. Oct. 3, 2003) (being served rotten food is unpleasant and unfortunate; however, it simply does not rise to the level of a constitutional violation because plaintiff has not shown that it resulted in a serious deprivation or that defendants were deliberately indifferent); Mayo v. Thompson, No. 85CV437 (E.D. Va. March 06, 1986) (alleged deficiencies in inmate food quality, such as rotten and spoiled food, do not normally amount to a constitutional infringement of rights absent a showing of illness and certainly would not amount to a violation of the Eighth Amendment as such deficiencies fall far short of being "subhuman" conditions that would "shock the conscience); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").

Applying these principles, the court finds that plaintiff fails to state any viable constitutional claim. Moreover, the affidavit of P. Scarberry, Food Service Director at WRSP, refutes plaintiff's allegations and establishes that the meals provided to WRSP inmates comport with VDOC standards and requirements. Scarberry indicates that the master menu meets minimum daily nutritional requirements and provides inmates with adequate portions and an appropriate amount of daily calories. Finally, regardless of whether plaintiff was, in fact, served many inadequate and spoiled meals, he fails

9

to present a genuine issue of material fact as to any serious or significant injury he suffered as a result of the alleged inadequate meals. The most plaintiff alleges is that he experienced some gastrointestinal discomfort and a rash; he presents no medical evidence or allegations that he suffered any serious injury or is at risk of injury.[8] Accordingly, as plaintiff cannot demonstrate that he sustained a serious or significant mental or physical injury as a result of the alleged inadequate meals, the court will grant summary judgment to the defendants as to this issue.[9, 10]

---

[8] The court notes that plaintiff alleges in his amended complaint that he suffers from weight loss, hunger pains, type II diabetes, mental anguish and emotional distress, and that he experienced a "mini-stroke" in June of 2006. Plaintiff does not provide any facts to support his claims of hunger and emotional distress, nor any medical evidence to substantiate his claims that he lost weight or suffered a stroke or that his diabetes is related to WRSP meals. Regardless, mere hunger is not a significant physical injury. See Madison v. Kilbourne, et al., Civil Action No. 7:04CV00639 (W.D. Va. July 18, 2006), rev'd on other grounds, Case No. 06-7333 (4th Cir. March 27, 2007).

[9] To the extent that plaintiff alleges that defendants have illustrated deliberate indifference to a serious illness or injury in violation of the Eighth Amendment, his claims fail under that analysis as well. To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Disagreements between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment are not cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Plaintiff complains of gastrointestinal problems, a rash, and type II diabetes. The affidavit of M. Stanford, WRSP Head Nurse, indicates that plaintiff has been receiving medication and follow-up care for gastrointestinal complaints and diabetes since March of 2005. She contends that his medical records do not indicate that the meals provided to him at WRSP have caused him any physical problems or have exacerbated his diabetes. The court finds that plaintiff's medical records reveal that plaintiff's medical conditions have been adequately monitored and treated by medical staff. In fact, plaintiff was examined thirteen times between March and August of 2007, at his request, and he received several tests and appropriate treatment for his many complaints. In particular, the notes of the treating WRSP physician indicate that, after extensive testing, it was determined that plaintiff did not suffer from any food allergies. The only indications of a rash were small, red areas on plaintiff's right forearm. Plaintiff admits in his response that the rash has healed. The records further reveal that plaintiff's request concerning an alternative diet was denied by the physician. Although plaintiff may be dissatisfied with the physician's diagnosis method or failure to prescribe an alternative diet, these complaints amount to nothing more than disagreements between medical staff and an inmate as to proper diagnostic methods and a course of treatment. Furthermore, plaintiff admits that he is receiving medication (Metformin, to control blood sugar level, Prilosec and Mytab Gas, for gastrointestinal problems) and does not contend that he has been denied medical care by the WRSP medical staff. Finally, he fails to allege that any non-medical personnel were personally involved or interfered with his

## V.

Based on the foregoing, the court finds that plaintiff has not presented any claims on which relief can be granted. Therefore, the court will grant defendants' motion for summary judgment and dismiss the complaint.[11]

Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

**ENTER:** This ___2nd___ day of ~~October~~ NOVEMBER, 2007.

_____
United States District Judge

---

treatment. Accordingly, the court cannot find that plaintiff's constitutional rights have been violated.

[10] Plaintiff requests that he be subjected to a polygraph test in order to corroborate his allegations concerning the food at WRSP. Assuming arguendo that plaintiff is being truthful, the foregoing analysis indicates that no constitutional right has been violated. Accordingly, this motion will be denied.

[11] Plaintiff contends in his response that he has been denied the opportunity to engage in discovery. The court notes that plaintiff's first request for discovery was denied as premature by order entered May 2, 2007. As plaintiff has failed to illustrate the relevance of his large discovery request to the issues at hand and he has not alleged claims sufficient to create a triable issue of fact, the court will again deny his motion for discovery. See Lewis v. Casey, 518 U.S. 343, 355 (1996) (finding that the right to access the court does not guarantee prisoners the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 725 (4th Cir. 1991) (summary judgment found to be proper where any further evidence developed through discovery would have been immaterial). Plaintiff also files in his response what the court will construe as plaintiff's third motion for counsel. Plaintiff's first motion for the appointment of counsel was denied by order entered February 9, 2007, and his second motion was denied by order entered May 2, 2007. As the court finds that plaintiff presents no genuine issues of material fact in this action, his motion will be denied as moot.

11